# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEMETRIUS COPELAND,
    Petitioner,

vs.

WANZA JACKSON, WARDEN,
    Respondent.

Civil Action No. 1:05-cv-823

Weber, J.
Hogan, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus pursuant

to 28 U.S.C. §2254. The case is now before the Court upon the petition (Doc. 1), respondent's

return of writ and exhibits thereto (Doc. 7), and petitioner's traverse to the return of writ. (Doc. 13).

## I.    PROCEDURAL HISTORY

This case involves the following facts, as summarized by the First District Ohio Court of

Appeals:[1]

> At trial, the state presented evidence that Copeland and a group of other young
> men had robbed six victims in a grocery store parking lot. All the victims except
> Washawn Ricks testified at trial. The victims indicated that a number of the
> robbers had possessed firearms and that they had brandished the guns while going
> through the victims' pockets to steal their money. The victims testified that, when
> the police arrived, a number of the robbers fled in a blue-green Pontiac Grand
> Prix.
>
> A police officer testified that, approximately two weeks after the robberies, he
> spotted a blue-green Grand Prix with Copeland in the driver's seat. When Copeland
> got out of the car, the officer ordered him to raise his hands. Copeland hesitated but
> ultimately complied. The officer then found a loaded firearm next to where Copeland
> was standing. The state and Copeland stipulated that he was under a legal disability.

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence
of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94
(6th Cir. 2004).

> The defense rested without presenting evidence. The jury found Copeland guilty of
> the offenses, and the trial court sentenced him to multiple prison terms.

(Doc. 7, Exh. 7 at 1-2).

Petitioner was indicted by the August 2003 Term of the Hamilton County, Ohio Grand Jury

on six counts of Aggravated Robbery in violation of Ohio Rev. Code § 2911.01(A)(1) with

specifications, six counts of Robbery in violation of Ohio Rev. Code § 2911.02(A)(2), one count of

Carrying Concealed Weapons in violation of Ohio Rev. Code § 2923.12(A) and one count of

Having Weapons While Under Disability in violation of Ohio Rev. Code  § 2923.13(A)(2). (Doc. 7,

Exh. 1). Petitioner entered a plea of not guilty and the case proceeded to jury trial. Petitioner was

found guilty as charged in the indictment but not guilty of the specifications. (Doc. 7, Exh. 2). On

December 8, 2003, petitioner was sentenced to an aggregate term of thirty years imprisonment.

(Doc. 7, Exh. 3).

Petitioner, through counsel, filed a timely notice of appeal to the First District Court of

Appeals. (Doc. 7, Exh. 4). On appeal, petitioner raised the following assignments of error:

1. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN
VIOLATION OF HIS CONSTITUTIONAL RIGHTS THUS PREJUDICING HIS
RIGHT TO A FAIR TRIAL.

2. THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR
AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN
APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY, ROBBERY,
CARRYING CONCEALED WEAPONS AND HAVING A WEAPON UNDER
DISABILITY.

3. THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY
SENTENCING APPELLANT.

(Doc. 7, Exh. 5). The State filed a response. (Doc. 7, Exh. 6). On October 27, 2004, the First

District Court of Appeals overruled petitioner's assignments of error, but reduced his sentence for

2

carrying a concealed weapon to seventeen months incarceration and his sentence for possessing a

weapon under disability to eleven months. (Doc. 7, Exh. 7).

Petitioner filed a timely appeal to the Supreme Court of Ohio on November 29, 2004. (Doc.

7, Exh. 8). Petitioner raised the following propositions of law:

> 1. TRIAL COUNSEL ACTS IN A[N] UNCONSTITUTIONAL MANNER WHEN
> HE FAILS TO FILE BASIC MOTIONS TO PROTECT HIS CLIENT[']S RIGHTS
> TO DUE PROCESS AND A FAIR TRIAL.
>
> 2. EVIDENCE THAT DOES NOT MEET THE ELEMENTS OF THE CRIMES
> CHARGED IS INSUFFICIENT AS A MATTER OF LAW.
>
> 3. A TRIAL JUDGE VIOLATES DUE PROCESS WHEN HE SENTENCES A
> DEFENDANT TO CONSECUTIVE NON-MINIMUM TERMS WITHOUT
> MAKING THE NECESSARY FINDINGS REQUIRED BY R.C. 2929.11 ET. SEQ.

(Doc. 7, Exh. 9). On March 16, 2005, the Supreme Court of Ohio denied petitioner leave to appeal

and dismissed the appeal as not involving any substantial constitutional question. (Doc. 7, Exh. 10).

In the meantime, on January 14, 2005, petitioner filed an application to reopen his direct

appeal alleging he was denied effective assistance of appellate counsel. (Doc. 7, Exh. 11). Petitioner

asserted that his appellate counsel was ineffective because he failed to identify and raise as

assignments of error:

> (1) Trial counsel was ineffective in not requesting, and the trial court committed plain
> error in not conducting, an allied offense hearing to determine whether Appellant
> should have been sentenced concurrently for the several counts of robbery in the
> indictment.
>
> (2) Trial counsel was ineffective in not objecting, and the trial court committed plain
> error in not conducting an inquiry into the facts, when the jury was instructed that
> Appellant was charged with complicity in the several counts of the indictment yet
> sentenced multiple times.

(Doc. 7, Exh. 11). On April 13, 2005, the Ohio Court of Appeals denied the application to reopen

3

stating that the issues could have been raised on appeal to the Ohio Supreme Court and are now

barred by the doctrine of res judicata. (Doc. 7, Exh. 12).

Petitioner appealed to the Supreme Court of Ohio. (Doc. 7, Exh. 13). In his memorandum in

support of jurisdiction, petitioner presented the following propositions of law:

> 1. APPELLATE COUNSEL IS INEFFECTIVE WHEN HE FAILS TO IDENTIFY
> AND RAISE PLAIN ERROR IN THE TRIAL COURT'S FAILURE TO CONDUCT
> AN ALLIED OFFENSE HEARING.
>
> 2. APPELLATE COUNSEL IS INEFFECTIVE WHEN HE FAILS TO IDENTIFY
> AND RAISE PLAIN ERROR IN THE TRIAL COURT'S SENTENCING
> APPELLANT CONSECUTIVELY ON AN INDICTMENT ALLEGING
> COMPLICITY.
>
> 3. RES JUDICATA DOES NOT BAR CONSIDERATION OF A TIMELY FILED
> APPLICATION TO REOPEN THE DIRECT APPEAL DUE TO A TIMELY
> APPEAL TO THE OHIO SUPREME COURT BEING TIMELY FILED.

(Doc. 7, Exh. 14). On August 10, 2005, the Ohio Supreme Court dismissed the appeal as not

involving any substantial constitutional question. (Doc. 7, Exh. 15).

On December 27, 2005, petitioner filed a petition for writ of habeas corpus in this Court

raising the following grounds for relief:

> **Ground One**: COPELAND WAS DENIED THE EFFECTIVE ASSISTANCE OF
> COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT AND FOURTEENTH
> AMENDMENT OF THE UNITED STATES CONSTITUTION WHERE TRIAL
> COUNSEL'S PERFORMANCE WAS SO DEFICIENT AS TO DEPRIVE
> COPELAND OF A FAIR TRIAL.
>
> **Ground Two**: THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT
> AS A MATTER OF LAW TO SUSTAIN THE CONVICTIONS, IN VIOLATION OF
> THE DUE PROCESS CLAUSE OF THE SIXTH AND FOURTEENTH
> AMENDMENTS TO THE U.S. CONSTITUTION.
>
> **Ground Three**: COPELAND WAS DENIED THE EFFECTIVE ASSISTANCE OF
> APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE
> U. S. CONSTITUTION WHEN COUNSEL FAILED TO RAISE ERROR IN THE

4

TRIAL COURT'S FAILURE TO CONDUCT AN ALLIED OFFENSE HEARING.

**Ground Four**: COPELAND WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON APPEAL IN VIOLATION OF THE SIXTH AMENDMENT OF THE U.S. CONSTITUTION WHEN COUNSEL FAILED TO RAISE ERROR IN THE TRIAL COURT'S SENTENCING COPELAND CONSECUTIVELY WHEN THE INDICTMENT ALLEGED COMPLICITY.

(Doc. 1).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a

presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C.

§ 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524,

530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are

contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144

F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110

Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated

on the merits in state court unless the adjudication either:

1.     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

A federal habeas court may issue the writ under the 'contrary to' clause if the state

5

court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if
it decides a case differently that we have done on a set of materially indistinguishable
facts. The court may grant relief under the 'unreasonable application' clause if the
state court correctly identifies the governing legal principle from ... [the Supreme
Court's] decisions but unreasonably applies it to the facts of a particular case. The
focus on the latter inquiry is whether the state court's application of clearly established
federal law is objectively unreasonable . . . and an unreasonable application is different
from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

Upon review of the entire record, this Court concludes that petitioner has failed to establish

that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief.

*See Williams v. Taylor*, 529 U.S. 362 (2000).


## III. GROUND ONE OF THE PETITION IS WITHOUT MERIT.

Ground One of the petition asserts that trial counsel was ineffective because he failed to file a

motion for severance and failed to renew his Rule 29 motion for acquittal at the close of all the

evidence. Petitioner asserts the following in support of his claim:

In this case, petitioner submits that he was denied effective assistance of counsel
because his counsel failed to file a Motion for Severance pursuant to Criminal Rule 14.
Specifically, petitioner states that his counsel did not file this motion to separate his
trial from that of Donte Hobbs. Petitioner is aware that joinder of defendants and the
avoidance of multiple trials is favored in law as is (sic) conserves judicial and
prosecutorial time, lessens expenses and diminishes inconvenience to witnesses.
However, in this particular case, the joinder was so prejudicial to petitioner receiving a
fair trial that it cannot be justified. This case did not involve co-defendants, but two
separate indictments with two separate case numbers with different counts against
different alleged victims. Certainly, having two trials may have been inconvenient for
the witnesses, however, it would also have reduced the likelihood of skewed results in
petitioner's trial. Petitioner submits that the main reason he was identified in court by
any of the State's witnesses was because he was sitting next to Mr. Hobbs who was
identified clearly by several of the witnesses as a perpetrator.

In addition, petitioner's counsel failed to renew a Rule 29 Motion for acquittal at the

close of all the evidence which could have removed the case from the jury's consideration.

Based upon the foregoing, petitioner submits that his counsel was ineffective for failing to file the Motion for Severance because he should have recognized the prejudice the joinder would have caused. Further, petitioner states that the failure to file did prejudice his right to a fair trial as he was identified and found guilty by association due to his presence with Mr. Hobbs. Finally, counsel was ineffective for failing to renew the Rule 29 Motion.

For all of the forgoing reasons, petitioner's convictions must be reversed and this writ should issue.

(Doc. 1, brief at 8).

In addressing the merits of petitioner's claim, the First District Court of Appeals, the last state

court to issue a reasoned opinion on the claim, found the following:

In his first assignment of error, Copeland now argues that he was denied the effective assistance of trial counsel. To establish ineffective assistance of counsel, there must be a showing that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from counsel's performance. [footnoting *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.]

Copeland first argues that counsel was deficient in failing to file a motion to sever his offenses from those of his co-defendant, Dante Hobbs. We find no merit in this argument. Each of the victims who testified was able to positively identify Copeland as a participant in the robberies, and there was no indication that the jury found Copeland guilty by association or that Copeland was otherwise prejudiced by the joint trial.

Copeland also argues that counsel was deficient in failing to renew a Crim.R. 29 motion at the close of all the evidence. As we more fully discuss under the second assignment of error, the state presented ample evidence that Copeland had committed the offenses. Therefore, any failure on the part of counsel to renew the Crim.R. 29 motion was harmless. The first assignment of error is overruled.

(Doc. 6, Exh. 7 at 6-8).

Petitioner has failed to show that the state court of appeals' decision is contrary to, or an

unreasonable application of, clearly established federal law. To demonstrate that counsel's

7

performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id.* at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In this case, the Ohio Court of Appeals' application of *Strickland* was not unreasonable. The state court determined that petitioner was not prejudiced by counsel's failure to move for a severance of his trial from that of Dante Hobbs. As the Court of Appeals reasonably determined, petitioner was positively identified as a participant in the robberies by each victim-witness who testified at trial. (See Tr. 181-82, testimony of Antonio Gibson; Tr. 240, testimony of Keith Bryant; Tr. 262-63, testimony of Jeremy Tinker; Tr. 304, testimony of Antonio Jackson; Tr. 282-83, testimony of Jeremy Love). Nor is there any indication that the jury found petitioner guilty by association. Thus, petitioner has failed to show a reasonable probability that the outcome of his trial would be different had counsel requested a severance of his trial.

Likewise, the Ohio Court of Appeals reasonably applied the *Strickland* standard to petitioner's

8

claim that trial counsel's failure to renew the Rule 29 motion for acquittal at the close of all the evidence violated his constitutional rights. The record shows that petitioner's counsel moved to dismiss each count of the indictment at the close of the State's case. (Tr. 476). After hearing argument, the trial court overruled the Rule 29 motion. (Tr. 478). Thereafter, the defense rested without presenting any evidence. (Tr. 483). Even assuming that counsel's failure to renew the Rule 29 motion was deficient, petitioner has not shown how he was prejudiced by counsel's failure. Since no new evidence was presented after the first motion for acquittal was denied, it is highly unlikely that the trial court would have granted the motion for acquittal had it been renewed. Given the quantum of evidence which the State had placed before the court, there is no reason to suspect that the trial judge's ruling on the motion would have been any different after the defense rested without presenting any additional evidence. Therefore, counsel's failure to move for an acquittal at the conclusion of all the evidence did not render the trial result unreliable or the proceeding fundamentally unfair because in all probability the result would have been the same even if the motion had been made. Under the circumstances, petitioner has not shown that he was prejudiced by trial counsel's allegedly deficient performance. Because petitioner cannot make the showing of prejudice required by the second prong of *Strickland,* petitioner's first ground for relief should be denied.

## IV. GROUND TWO OF THE PETITION IS WITHOUT MERIT.

In Ground Two of the petition, petitioner asserts there was insufficient evidence to support his convictions. In this regard, petitioner contends:

In the present case, petitioner submits that there was not sufficient evidence to convict

9

him of Aggravated Robbery, Robbery, Carrying a Concealed Weapon, and Having Weapons While Under Disability. Specifically, petitioner asserts that the State failed to prove, beyond a reasonable doubt, that he, in attempting or committing a theft offense, had a deadly weapon on or about his person or under his control, and displayed, brandished, indicated possession or used the deadly weapon. RC 2911.01 (A) (1), RC 2911.02 (A), and RC 2923.13 (A).

Petitioner first submits that the State failed to prove beyond a reasonable doubt that he was one of the perpetrators involved in the incident on April 27, 2003. None of the witnesses who testified were consistent in their description of petitioner. The witnesses could not even agree on the time of night they were in the parking lot, who they were with, or what the lighting conditions were. Mr. Gibson testified that petitioner was wearing a black shirt and black pants with nothing on his head. Mr. Johnson thought petitioner was wearing a red baseball cap. Mr. Tinker and Mr. Jackson said petitioner was wearing a black hoodie, but Mr. Love said petitioner had a black hood halfway over his head. Two of the witnesses thought that petitioner was in the back of the police car for identification that night, the others said no or they weren't sure. Some witnesses said he had a gun, one witness even said he had two, but most weren't sure. All of the witnesses testified that their minds were elsewhere, that they didn't look at faces, that they weren't paying attention or just couldn't remember. The most telling testimony, however, was from Mr. Bryant, Mr. Love and Mr. Jackson who all testified at the bind over hearing, just one month after the incident, that they did not see petitioner nor did they recognize him, but after being showed photos of petitioner by the police prior to trial, they now recognized him. The only consistency was the statements from all the witnesses that petitioner was not the one who told them to get on the ground nor empty their pockets, nor actually go through any pockets that evening.

Apparently, the jury also was not convinced that petitioner had a firearm that evening because petitioner was acquitted of all gun specifications in his indictment. Following this logic, the jury should not have convicted petitioner of either Aggravated Robbery or Robbery as each count involved the possession and/or use of a firearm. Therefore, the jury must have convicted petitioner based upon his complicity in these acts. However, as an accomplice, if he did not have a weapon, as the jury found, then he could not possess the same criminal intent, as is required under law.

Additionally, there was no testimony from Washawn Ricks to establish the offenses of Aggravated Robbery and Robbery as set forth in counts one and two in the indictment. Without any testimony from Mr. Ricks that he was a part of this incident, there is no rational way the jury could have convicted petitioner on these counts.

There also was not sufficient evidence to convict petitioner of Robbery. Specifically, the State failed to prove, beyond a reasonable doubt, that the petitioner, in attempting

10

or committing a theft offense, inflicted or attempted to inflict physical harm on another, or used or threatened the immediate use of force against another. Incorporating his argument set forth above, petitioner asserts that the State failed to prove, beyond a reasonable doubt, that the petitioner was the perpetrator of this act and/or could not have been without a weapon.

Furthermore, petitioner submits that the trial court could not have convicted petitioner of both Aggravated Robbery and Robbery charges in the same indictment as they are allied offenses of similar import, i.e. the same offense. While conceding that the trial court merged these convictions for the purpose of sentencing, petitioner claims error in the convictions themselves. These offenses were of such character that commission of one crime would result in the commission of the other. Under Ohio law, the legislature has forbidden a defendant to be convicted twice in such a circumstance. Though there was no objection by petitioner at trial, the conviction of both types of robbery is plain error. The prejudice here is that a criminal record exists for two felony robberies, but only one act.

Regarding the charges of Carrying a Concealed Weapon and Having Weapons Under Disability, the State must prove, among other elements, that petitioner knowingly had a weapon. Testimony was that petitioner was in a vehicle with two other persons when the police officer approached. The police officer testified that all three persons exited the vehicle, and after she placed all three in custody, did she observe the weapon lying on the ground near the sidewalk where the three had been standing. At no time did the officer witness petitioner concealing the gun, carry the gun or having it ready at hand or using it. In his statement, petitioner states that the weapon was not his, but belonged to one of the other individuals that was present.

Based upon the foregoing, petitioner posits that the State did not prove beyond a reasonable doubt that petitioner was guilty of the offenses of Aggravated Robbery, Robbery, Carrying a Concealed Weapon, or Having Weapons While Under Disability.

(Doc. 1, brief at 9-11).

In overruling this assignment of error, the state appellate court hearing petitioner's direct

appeal made the following findings regarding his claim of insufficient evidence to convict:

The aggravated-robbery statute, R.C. 2911.01(A)(1), provides that "[n]o person, in attempting or committing a theft offense *** shall ***[h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2923.12(A)(2), governing carrying concealed weapons, provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand *** [a] handgun ***.["] R.C. 2923.13(A)(2), governing weapons under

11

disability, provides that "no person shall knowingly \*\*\* carry \*\*\* any firearm or dangerous ordnance, if \*\*\*[t]he person\*\*\* has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence."

In the case at bar, the conviction were in accordance with the evidence. The testimony of the victims indicated that Copeland had participated in the act of holding them at gunpoint and taking, or attempting to take, their property. Although there were inconsistencies in the victims' testimony, including a question as to which of the perpetrators had possessed firearms, each of the victims who testified was able to identify Copeland as one of the robbers, and the officer's testimony concerning Copeland's possession of the blue-green Grand Prix further supported the state's case. And while Washawn Ricks did not testify at trial, the testimony of the other victims indicated that Ricks had been forced, at gunpoint, to surrender his property. Thus, we cannot say that the jury lost its way in convicting Copeland of the aggravated robberies. Moreover, the police officer's testimony concerning Copeland's possession of the loaded firearm when he got out of the Grand Prix amply supported the convictions under R.C. 2923.12(A)(2) and 2923.13(A)(2).

Copeland also argues that he could not have also been convicted of the six counts of robbery that were included in the indictment. But because the trial court merged the robbery counts with the aggravated robbery counts, we find no merit in Copeland's argument.

(Doc. 7, Exh. 7 at 3-4).

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Id.* at 318-319.

12

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the

credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v.*

*Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003)(citing *Marshall v. Lonberger*, 459 U.S. 422, 434

(1983)). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."

*Id.* In addition, circumstantial evidence may be sufficient to support a conviction and such evidence

need not remove every reasonable hypothesis except that of guilt. *See Jackson,* 443 U.S. at 326;

*Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v. Collins,* 100 F. Supp.2d 647, 705

(S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002).

Therefore, the question for this Court is whether the Ohio court of appeals' application of the

"no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in *State v.*

*Jenks*, 61 Ohio St.3d 259 (1991), was contrary to or an unreasonable application of that test to the

facts of this case.

Upon review of the entire record, this Court agrees with the finding of the state court of

appeals that from the testimony presented, the jury could find petitioner guilty of aggravated robbery

beyond a reasonable doubt. The State presented evidence that petitioner and at least four other

individuals, while brandishing guns, ordered a group of six victims to the ground and made them

empty their pockets. Antonio Gibson testified that the four or five people who robbed him came from

a greenish blue four door Grand Prix. (Tr. 177). Gibson identified petitioner as one of the offenders.

(Tr. 181). Gibson testified that petitioner had a gun in his hand and was "standing on" one of the

other victims. (Tr. 182). Keith Bryant testified that the group of offenders got out of a green Grand

Prix and "pulled out guns and told us to empty our pockets." (Tr. 238-239). Bryant identified

petitioner as one of the perpetrators and as having a gun. (Tr. 241). Jeremy Tinker also testified that

13

the group of offenders exited a greenish-blue Grand Prix, approached the group of victims, and had

guns. (Tr. 260-261). Tinker identified petitioner as one of the offenders and stated that he had a gun.

(Tr. 262-263). Tinker further testified that Washawn Ricks, another victim, "got laid down too." (Tr.

269-270). Jeremy Love identified petitioner as one of the offenders. (Tr. 283). He also testified that

petitioner had a gun. (Tr. 284). He testified that the perpetrators arrived in a green "Grand Prix or

Cutlass Supreme" sedan. (Tr. 285-286). Love also testified that Washawn Ricks was on the ground

next to him during the incident. (Tr. 286). Antonio Jackson testified that the offenders approached

the victims and told them to "get on the ground." (Tr. 302). Jackson testified that at least four of the

offenders had guns and told the victims to empty their pockets. (Tr. 303). Jackson identified

petitioner as one of the perpetrators. (Tr. 304). He also testified that Washawn Ricks was one of the

victims. (Tr. 310). Officer Anthony Upchurch testified about how he came upon the robbery in

progress and he saw the suspects flee the scene. (Tr. 339-346). Officer Upchurch described the

weapons that were recovered at the scene, which were also identified by the victims through their

testimony. (Tr. 349-353). Based on the foregoing, the evidence was sufficient to support the jury's

finding of guilt on all six counts of Aggravated Robbery and Robbery.

  The State also presented sufficient evidence to establish that petitioner was knowingly

carrying a gun in violation of R.C. § 2923.12 and that he was carrying a weapon after having

been adjudicated a delinquent child for the commission of a previous robbery in violation of R.C.

§ 2923.13. Police Officer Shannon Heine testified about the events surrounding the May

7, 2003, arrest. (Tr. 395-404). Officer Heine testified that petitioner exited the front driver's side of

the Grand Prix. (Tr. 399). After petitioner was secured in the police vehicle, Officer Heine recovered

a gun from the ground where petitioner had been standing. (Tr. 401). Officer Heine testified that the

14

gun was recovered from the grass where petitioner's feet had been. (Tr. 402). Although petitioner denied the gun belonged to him (Tr. 403), the evidence presented was sufficient to support petitioner's convictions for Carrying a Concealed Weapon and Having Weapons While Under Disability.

When viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and for the reasons discussed by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions. Therefore, Ground Two of the petition is without merit and should be denied.

## V. GROUNDS THREE AND FOUR OF THE PETITION ARE PROCEDURALLY DEFAULTED AND, IN THE ALTERNATIVE, WITHOUT MERIT.

In Ground Three of the petition, petitioner contends his appellate counsel was ineffective because he failed to identify and raise as a claim of error on appeal the trial court's imposition of multiple punishments for the "same" offense of aggravated robbery in violation of the Fifth Amendment's Double Jeopardy Clause. Petitioner asserts that the aggravated robbery offenses with which he was charged arose out of a single transaction and should have been merged because they constitute allied offenses of similar import. "The offenses of Robbery[2] were alleged to have occurred at the same time and in the same location. The only distinction between the charges was that there were alleged to have been different victims." (Doc. 1, brief at 13). Ground Four of the petition asserts that appellate counsel was ineffective for failing to raise as error in the direct appeal the consecutive

---

[2]It appears that petitioner is referring to the six counts of Aggravated Robbery for which he was sentenced to five years imprisonment each to run consecutively. The six counts of Robbery were in fact merged with the Aggravated Robbery charges for sentencing.

sentences when the jury relied upon his complicity to convict him of all six offenses. Petitioner argues that the jury "relied upon the same conduct, that of Copeland being present while several individuals were robbed simultaneously, to support a finding of guilt as to each robbery offense. As such, the trial court had no basis to issue multiple consecutive sentences." (Doc. 1, brief at 15).

Respondent argues that petitioner's claims of ineffective assistance of appellate counsel have been procedurally defaulted and waived. Respondent also contends that these claims are without merit in any event.

As the issues involved in Grounds Three and Four of the petitioner are related, the Court shall consider them together. For the reasons that follow, the Court finds petitioner has procedurally defaulted Grounds Three and Four of the petition.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz*, 888 F.2d 1097, 1099 (6th Cir. 1989).

Federal courts may not consider "contentions of federal law that are not resolved on the merits

16

in the state proceeding due to petitioner's failure to raise them as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through

the requisite levels of state appellate review to the state's highest court, or commits some other

procedural default to preclude review of the merits of petitioner's claims by the state's highest court,

and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to

pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See*

*O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763

F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The

Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to
> the petitioner's claim and that the petitioner failed to comply with the rule; (2) the
> court must determine whether the state courts actually enforced the state procedural
> sanction; (3) it must be decided whether the state procedural forfeiture is an adequate
> and independent state ground upon which the state can rely to foreclose review of a
> federal constitutional claim; and (4) if the court has determined that a state procedural
> rule was not complied with and that the rule was an adequate and independent state
> ground, then the petitioner is required to demonstrate that there was cause for him not
> to follow the procedural rule and that he was actually prejudiced by the alleged
> constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002), citing

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). In determining whether a state court rested its

holding on a procedural default so as to bar federal habeas review, "the last state court rendering a

judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238

F.3d 399, 406 (6th Cir. 2000), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*,

951 F.2d 94, 96 (6th Cir. 1991). Normally, a federal habeas court will find that a petitioner

procedurally defaulted if the last state court rendering a decision makes a plain statement to that

17

effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9. *See also Teague v. Lane,* 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

A "fundamental miscarriage of justice" occurs only in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To be credible, such a claim "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

In this case, petitioner has procedurally defaulted his ineffective assistance of appellate counsel claims. First, petitioner failed to raise his ineffective assistance of counsel claims with the Supreme Court of Ohio on direct appeal. In Ohio, "[c]laims of ineffective assistance of appellate counsel may be raised in an application for reconsideration in the court of appeals or in a direct appeal to the Supreme Court pursuant to Section 2(B)(2)(a)(iii), Article IV of the Ohio Constitution." *State v.*

18

*Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204, 1205 (1992) (paragraph 2, syllabus). Since the issue of ineffective assistance of appellate counsel could have been raised on direct appeal to the Supreme Court of Ohio but was not, res judicata barred any further litigation of the claim.[3]

Second, the Ohio Court of Appeals actually enforced the state procedural bar to any further consideration of this claim when it denied petitioner's application to reopen his direct appeal pursuant to Rule 26(B) on the basis of res judicata. (Doc. 7, Exh. 12). Because the Ohio Supreme Court summarily dismissed petitioner's appeal of the denial of his Rule 26(B) application without comment, the Court must presume that the Ohio Supreme Court relied on the procedural default expressly relied upon by the Ohio Court of Appeals. *See Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").

Third, the procedural bar of res judicata is an adequate and independent state ground upon which the state can rely to foreclose review of petitioner's ineffective assistance of appellate counsel claim. "[T]he Supreme Court of Ohio has repeatedly ruled that even having the ability to raise the issue of ineffective assistance of appellate counsel in the supreme court may properly invoke res judicata to bar an App. R. 26(B) application." *State v. Krzywkowski*, 2003 WL 21356731, *1 (Ohio App. 8 Dist.), citing *State v. Terrell*, 72 Ohio St.3d 247, 648 N.E.2d 1353 (1995); *State v. Dehler*, 73 Ohio St.3d 307, 652 N.E.2d 987 (1995); *State v. Colombo*, 73 Ohio St.3d 306, 652 N.E.2d 987

---

[3]The Supreme Court of Ohio has stated that a claim of ineffective assistance of appellate counsel may be barred by the doctrine of res judicata unless circumstances render the application of the doctrine unjust. *State v. Murnahan*, 63 Ohio St.3d 60, 66 584 N.E.2d 1204, 1209 (1992).

(1995); *State v. Hill*, 78 Ohio St.3d 174, 677 N.E.2d 337 (1997); *State v. Gillard*, 85 Ohio St.3d 363,

708 N.E.2d 708 (1999). *See also State v. Hutton*, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956

(2003); *State v. Cooey*, 99 Ohio St.3d 345, 346, 792 N.E.2d 720, 721 (2003). In addition, Ohio's

doctrine of res judicata is an adequate and independent state ground upon which the state can rely to

foreclose review of a federal constitutional claim. *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir.

2004); *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22

(6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001); *Van Hook v. Anderson*, 127 F. Supp.2d 899, 916-

917 (S.D. Ohio 2001). Thus, the first three *Maupin* factors are satisfied.

Because petitioner has procedurally defaulted his ineffective assistance of appellate counsel

claim, he has waived such claim for purposes of federal habeas corpus review in the absence of any

showing by him of "cause" for his default and actual prejudice as a result of the alleged error, or that

failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501

U.S. at 750; *see also Murray,* 477 U.S. at 485; *Isaac,* 456 U.S. at 129; *Sykes,* 433 U.S. at 87.

Petitioner has not provided any justification as "cause" for his procedural default, nor has he shown

that failure to consider his ineffective assistance of appellate counsel claim will result in a

"fundamental miscarriage of justice." Thus, Grounds Three and Four of the petition are waived.

Alternatively, petitioner's claims of ineffective assistance of appellate counsel are without

merit. Upon review of petitioner's claims under the *Strickland* standard, this Court concludes that

petitioner has not shown that his appellate counsel's representation was deficient within the meaning

of the Sixth Amendment. Petitioner contends that counsel rendered ineffective assistance because he

failed to argue that the six Aggravated Robbery convictions were allied offenses of similar import and

that he should not have been given consecutive sentences based on a "the same conduct" of

20

complicity. Petitioner's argument is without merit because these convictions were not allied offenses of similar import and, therefore, the imposition of multiple punishments did not violate double jeopardy.

The Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. This guarantee against double jeopardy, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), among other things, protects against "multiple punishments for the same offense" imposed in a single proceeding. *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)). In the "multiple punishment" context, the Double Jeopardy Clause's protection is "limited" to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Brown v. Ohio,* 432 U.S. 161, 165 (1977). The Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses. "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson,* 467 U.S. at 499 (citations omitted).

The "same elements" test established in *Blockburger v. United States,* 284 U.S. 299, 304 (1932), *i.e.*, "whether each [statutory] provision requires proof of a fact which the other does not," is normally used in federal criminal cases to determine whether two offenses are sufficiently different to allow the imposition of cumulative punishment. *Johnson,* 467 U.S. at 499 n.8; *see also Brown,* 432

21

U.S. at 166. The *Blockburger* test, a rule of statutory construction for federal statutes, does not necessarily control the inquiry into the intent of a state legislature. *Johnson,* 467 U.S. at 499 n.8; *Banner v. Davis,* 886 F.2d 777, 780-82 (6th Cir. 1989). Instead, when assessing the intent of a state legislature, the federal courts must defer to and are bound by the state courts' construction of their own statutes. *Hunter,* 459 U.S. at 368 (citing *O'Brien v. Skinner,* 414 U.S. 524, 531 (1974)); *see also Johnson,* 467 U.S. at 499; *Brown,* 432 U.S. at 167; *Banner,* 886 F.2d at 780. A state legislature may create substantive crimes and punishments that overlap to some degree without violating the Double Jeopardy Clause. *Missouri v. Hunter*, 459 U.S. 359 (1983). "Even if the crimes are the same under *Blockburger,* if it is evident that a state legislature intended to authorize cumulative punishments [for them, the federal] court's inquiry is at an end." *Johnson,* 467 U.S. at 499 n.8; *see also Hunter,* 459 U.S. at 368-69 ("Where . . . a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial" without violating the Double Jeopardy Clause.); *Banner,* 886 F.2d at 780-82.

The Ohio legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute, Ohio Rev. Code § 2941.25. *See State v. Rance,* 85 Ohio St.3d 632, 635, 710 N.E.2d 699, 703 (1999); *see also Jones v. Baker,* 35 F.3d 566 (6th Cir. 1994) (unpublished), 1994 WL 464191, at **3, *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (6th Cir. 1994)(unpublished), 1994 WL 56933, at **2. The statute provides:

> (A) Where the same conduct by [the] defendant can be construed to
> constitute two or more allied offenses of similar import, the indictment
> or information may contain counts for all such offenses, but the

22

> defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of
> dissimilar import, or where his conduct results in two or more offenses
> of the same or similar kind committed separately or with a separate
> animus as to each, the indictment or information may contain counts for
> all such offenses, and the defendant may be convicted of all of them.

The Ohio Supreme Court has held that this provision permits the trial court to convict and

impose cumulative sentences for two or more offenses arising from the same incident if the offenses

(1) are of dissimilar import; or (2) are of similar import, but were committed separately or with

separate animus. *Rance*, 85 Ohio St.3d at 636, 710 N.E.2d at 703. The applicable test for deciding the

issue potentially involves a two-step analysis under the state statute. First, if the statutory elements of

the various crimes, considered "in the abstract" without regard to the particular facts of the case, are

found to be of dissimilar import because they do not "correspond to such a degree that the

commission of one crime will result in the commission of the other," the multiple convictions and

punishments are permitted and the court's inquiry ends. 85 Ohio St.3d at 638, 710 N.E.2d at 704. On

the other hand, if the offenses are found to be of similar import, the second level of inquiry is

triggered requiring the court to determine whether or not the defendant may be cumulatively punished

for them because, as a factual matter, they were committed separately or with a separate animus. *See

id.; see also State v. Jones,* 78 Ohio St.3d 12, 13-14, 676 N.E.2d 80, 81-82 (1997). This

determination does not turn on "the presence or absence of any specific factors," but rather is based

on the particular facts of each case as gleaned from the record. *Jones,* 78 Ohio St.3d at 13-14, 676

N.E.2d at 81-82.

In the instant case, the elements of the six separate Aggravated Robbery offenses are identical

because the crimes for which petitioner was convicted were the same. However, an individual can be

23

convicted of several counts of the same offense if each count involves a different victim. Under Ohio

law, it is well established that where a defendant commits the same offense against different victims

during the same course of conduct, a separate animus exists for each offense. *See State v. Smith*, 80

Ohio St.3d 89, 118, 684 N.E.2d 668, 694 (1997) (injury is an element of aggravated robbery; because

defendant inflicted injuries on each victim, the offenses were separate), *cert. denied*, 523 U.S. 1125

(1998). *See also State v. Hughley*, 20 Ohio App.3d 77, 78, 484 N.E.2d 758, 760 (Ohio App. 11th

Dist. 1984) (separate convictions proper as to each patron robbed in a saloon); *State v. Raheem*, 1998

WL 636984, *4 (Ohio App. 1st Dist. 1998) (when defendant enters a business, announces a robbery,

and takes property from more than one patron, a separate animus exists for each victim). Thus, each

offense is distinct when a separate victim is involved and petitioner could be convicted and sentenced

on the six separate counts of Aggravated Robbery under Ohio law. As a result, it would not have

been reasonable to expect petitioner's appellate counsel to assign this as error in the direct appeal.

Accordingly, petitioner is not entitled to federal habeas corpus relief based on the ineffective

assistance of appellate counsel claims alleged in Grounds Three and Four of the petition.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be
DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the constitutional claims
alleged in Grounds Three and Four of the petition, which this Court has concluded are barred from
review on waiver grounds, because under the first prong of the two-part standard enunciated in *Slack
v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether

24

this Court is correct in its procedural ruling.[4]

3. A certificate of appealability should not issue with respect to the remaining claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

4. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 5/14/07

Timothy S. Hogan
United States Magistrate Judge

---

[4]Because this Court finds that the first prong of the two-part *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated viable constitutional claim for relief in Ground One of the petition. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEMETRIUS COPELAND,
      Petitioner,

    vs.

WANZA JACKSON, WARDEN,
      Respondent.

Civil Action No. 1:05-cv-823

Weber, J.
Hogan, M.J.

### NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

26